USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: Feb 28 2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GERALD ROSS,

                        Petitioner,

        -against-

MICHAEL KIRKPATRICK,

                        Respondent.

16-CV-1623 (AT) (BCM)

**REPORT AND RECOMMENDATION
TO THE HON. ANALISA TORRES**

**BARBARA MOSES, United States Magistrate Judge.**

Petitioner Gerald Ross seeks a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254. On July 1, 2010, petitioner twice exposed himself to an eight-year-old girl in a store in Manhattan, and asked her to touch his penis. Before trial, the District Attorney offered him a plea agreement under which he would serve two years in prison. According to petitioner, his trial counsel incorrectly advised him, while he was considering the plea offer, that his maximum sentence after trial would be four years. In fact, he faced up to eight years. Petitioner rejected the plea agreement, was convicted following a jury trial, and was sentenced to eight years in prison.

In this action, referred to me for report and recommendation (Dkt. No. 6), petitioner argues that his trial counsel's erroneous advice deprived him of his Sixth Amendment right to the effective assistance of counsel. The New York courts considered and rejected the same claim, concluding that petitioner (i) failed to show that his counsel incorrectly advised him, and (ii) failed to show a reasonable probability that he would have accepted the plea offer had he been correctly advised, and thus failed to show prejudice flowing from the allegedly incorrect advice. Because neither determination was unreasonable, I respectfully recommend that his petition be denied.

## I.    BACKGROUND

### A.    Factual Background

On July 9, 2010, J.H. and her mother went shopping for school supplies at a Staples office supply store in lower Manhattan. Once inside the store, J.H., who was eight years old, left her mother's company to look at construction paper and dictionaries. While she was alone, petitioner, who was 51 years old,[1] exposed his penis to her and asked her to touch it. (Tr. 55-56.)[2] J.H. walked away, but petitioner followed her, exposed his penis again, and again asked her to touch it. (*Id.*) J.H. then ran to tell her mother, and informed store employees, who called the police. Petitioner was arrested the next day when he returned to the store.

### B.    Indictment and Criminal Proceedings

Petitioner was indicted on two charges of attempted sexual abuse in the first degree in violation of N.Y. Penal Law ("PL") §§ 130.65(3) and 110.00,[3] one count of endangering the welfare of a child in violation of PL § 260.10(1), and two counts of public lewdness in violation of PL § 245.00. (SR 39-40.)

---

[1] *See* New York State Department of Corrections and Community Supervision, Inmate Lookup for Gerald Ross, DIN 11A2443, http://nysdoccslookup.doccs.ny.gov/GCA00P00/WIQ3/WINQ130 (last visited February 27, 2019).

[2] "Tr." refers to the transcript of the testimonial portion of petitioner's trial in this action, which is bound together with the transcript of petitioner's pretrial *Huntley* hearing, voir dire, and opening statements (collectively the "Huntley Tr.") and his later sentencing hearing (the "Sent. Tr."). "SR" refers to the state court record. On June 9, 2016, I granted the state's request to file the transcripts and the state court record under seal, as they refer extensively to the victim of petitioner's offense by name. *See* Order dated June 9, 2016 (Dkt. No. 14), at 2; N.Y. Civil Rights Law § 50-b (identity of victims of sex offenses to remain confidential); Fed. R. Civ. P. 5.2 (minors to be referred to by initials in court papers).

[3] PL §§ 70.80, 110.05, and 130.65 have each since been amended in ways not relevant to the petition. All statutory references in this Report and Recommendation are to the provisions in effect at the time of petitioner's conviction.

Sexual abuse in the first degree is a Class D felony. *See* PL § 130.65. Under PL § 110.05(6), an attempt to commit a crime is a Class E felony where the crime attempted is a Class D felony. Therefore, attempted sexual abuse in the first degree is a Class E felony. Under PL § 70.80(5), the minimum sentence for a Class E felony sexual offense is two and one half years in prison, and the maximum sentence is four years in prison, where – as here – the defendant is a predicate felony sex offender and his predicate conviction was for a violent felony offense.[4] Since the indictment charged petitioner with two distinct counts of attempted sexual abuse in the first degree (SR 39), conviction on both would permit the court to sentence him to two consecutive four-year terms. *See People v. Ramirez,* 89 N.Y.2d 444, 451, 677 N.E.2d 722 (1996) (court may impose consecutive sentences where defendant commit multiple offenses through separate and distinct acts).[5]

At a calendar call held on August 12, 2010, Assistant District Attorney ("ADA") Rachel Ferrari noted, on the record, the terms of a plea offer that her office made to petitioner: "We are recommending, on a plea to the charge [of attempted sexual abuse in the first degree], two to four years with ten years post release supervision and a waiver of appeal." (SR. 3.)

Before trial, the People again offered petitioner a plea deal, this time offering a determinate sentence of two years imprisonment followed by five years of post-release supervision, in return for a plea of guilty to a single charge of attempted sexual abuse in the first degree. (SR 43; Huntley Tr. 2.). On February 28, 2011, at the start of petitioner's *Huntley* hearing, his attorney Lisa Pelosi

---

[4] Petitioner has an extensive criminal record. (Huntley Tr. at 36-39.) As relevant here, petitioner was convicted of rape in the first degree in 1985 and sentenced to 7 to 14 years of imprisonment. (*Id.*) He was released on parole in 1993, but his parole was revoked in 1998. (*Id.*) He was convicted of attempted burglary in the third degree on July 8, 1998. (Sent. Tr. at 2.) That burglary conviction is the basis of his predicate felony offender status for this proceeding. (SR 57-58, 59, 61.)

[5] Endangering the welfare of a child is a Class A misdemeanor, PL § 260.10. Under New York law, a sentence on the misdemeanor provision would merge with any sentence on the felony sexual abuse counts. *See* PL § 70.35.

stated on the record that she had "reviewed once again the store video with my client," along with the video portion of the complaining witness' Grand Jury testimony and the terms of the People's offer, but that petitioner "requested that he go to trial." (SR 44, 48; Huntley Tr. 2.) The Hon. Ronald Zweibel asked attorney Pelosi whether she had "made it clear to [petitioner] that potentially he faces a possible sentence of a four year determinate sentence and fifteen years post release supervision," to which she responded, "[y]es, I was very clear about that." (SR 44, 48-49; Huntley Tr. 2-3.)

On March 1, 2011, after jury selection, the People requested that the Court revoke petitioner's bail and remand him to custody. (SR 52; Huntley Tr. 171.) ADA Brady noted that petitioner, if convicted, faced "a minimum of two years in State prison and a maximum of four and I think at this point he has every incentive to flee." (SR 53; Huntley Tr. 172.) The court accepted the People's argument and remanded petitioner. (SR 54; Huntley Tr. 173.)

On April 7, 2011, following a jury trial, petitioner was convicted of two counts of attempted sexual abuse in the first degree and one count of endangering the welfare of a child. (Tr. 226; Sent. Tr. 9-10.)[6] During his sentencing hearing, petitioner continued to maintain that he was "not guilty of this." (Sent. Tr. 9.) He was sentenced to four years of imprisonment on each count of attempted sexual abuse, to run consecutively, followed by ten years of supervised release. (Sent. Tr. 10.) He was also sentenced to one year in prison on the charge of endangering the welfare of a child, to run concurrently with his sentence for attempted sexual abuse. (Sent. Tr. 10).

---

[6] The public lewdness counts were dismissed on the People's motion at the conclusion of the defense case. (Tr. 151.)

### C.    Post-Conviction Proceedings

#### 1.    Petitioner's CPL § 440.10 Motion

On June 5, 2013, represented by new counsel, petitioner filed a motion to vacate his conviction pursuant to N.Y. C.P.L. ("CPL") § 440.10, arguing that he was denied the effective assistance of his trial counsel because she failed to advise him properly as to the maximum sentence he was facing when considering the plea offer. (SR 13-34.) In an affidavit in support of his § 440.10 motion, petitioner stated, "If I had known that I was facing a potential sentence of eight years of imprisonment, I would have seriously considered accepting" the offer. (SR 45.)

Attorney Pelosi also submitted an affirmation in support of petitioner's § 440.10 motion. (SR 67.) She recalled having a discussion of the offer with petitioner, but did not recall any specific details. (SR 68.) She stated that it was her usual practice to research and advise defendants of their maximum possible sentence in any discussion of whether to plead guilty. (*Id.*) She no longer had any notes or her case file because "[i]mmediately after sentencing, I handed over my file and notes to . . . Mr. Ross's wife, at her request." (*Id.*)

On January 16, 2014, Justice Zweibel denied petitioner's motion, without an evidentiary hearing. (SR 115-23.) The court "reject[ed] any suggestion that petitioner was unaware of the maximum sentence he faced when considering whether to accept the plea offer." (SR 120.) Justice Zweibel found it "unlikely that defense counsel 'misunderstood' or 'confused' [petitioner's] sentencing exposure or that she failed to discuss it with him" (*id.*), noting that it was attorney Pelosi's usual practice to research her client's maximum sentencing exposure and inform her client of the risk. (SR 120-21.) The court acknowledged that "neither this Court nor the prosecutor told defendant on the record that he faced consecutive sentences," but found no "indication" in the record "that his attorney did not explain that the sentences could run consecutively if he was convicted of both counts during their extensive discussions" (SR 122), adding, "The Court can

5

think of several strategic reasons why defense counsel did not raise the fact that he faced consecutive sentences on the record." (*Id*.)

The court further found that even if petitioner's counsel failed to inform him of the maximum possible sentence, petitioner was not entitled to relief because "there is no evidence that the result in this case would have been any different, namely, that [petitioner] would have accepted the plea." (SR 121.) Justice Zweibel noted that petitioner's own affidavit "does not assert that he would have accepted the plea and pled guilty, but rather states that he would have 'seriously considered' pleading guilty." (*Id*.)

### 2.    Petitioner's Consolidated Appeal

Petitioner appealed both the denial of his § 440.10 motion and his judgment of conviction. (SR 124-82.) The Appellate Division granted leave to appeal the denial of the § 440.10 motion, consolidated it with the direct appeal, and affirmed both the conviction and the denial of the § 440.10 motion. As to the § 440.10 motion, the Appellate Division found that the "submissions on the motion failed to demonstrate that, but for counsel's allegedly incorrect advice regarding the possibility of consecutive sentencing, there was a reasonable probability that defendant would have accepted the People's plea offer." *People v. Ross*, 123 A.D.3d 454, 998 N.Y.S.2d 177 (1st Dep't 2014). Leave to appeal to the Court of Appeals was denied on August 10, 2015. *People v. Ross*, 26 N.Y.3d 934, 38 N.E.3d 843 (2015).

### D.    The Habeas Corpus Petition

Before this Court, petitioner asserts a single ground for relief: that he was deprived of the effective assistance of counsel when his attorney failed to advise him of the maximum possible sentence if convicted at trial. Pet. (Dkt. No. 1) at 6.

## II.    DISCUSSION

### A.    Timeliness

Under 28 U.S.C. § 2244, as amended by the Antiterrorism and Effective Death Penalty Act (AEDPA), a petitioner must file his *habeas corpus* petition within one year of the date his conviction becomes "final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). This one-year period is tolled while "a properly filed application for State post-conviction or other collateral review" is pending. Time begins to run again on the date the collateral proceeding is "finally disposed of and further appellate review is unavailable under the particular state's procedures." *Bennett v. Artuz*, 199 F.3d 116, 120 (2d Cir. 1999), *aff'd*, 531 U.S. 4 (2000).

Respondent does not challenge the timeliness of the petition. Having considered the limitations issue *sua sponte*, *see Day v. McDonough*, 547 U.S. 198, 209 (2006), I conclude that petitioner timely filed his *habeas* petition. His conviction became final on November 9, 2015 – 90 days after the Court of Appeals denied leave to appeal – which is when his time to petition for a writ of *certiorari* before the United States Supreme Court expired. Petitioner filed his petition in this Court on March 3, 2016, well within AEDPA's one year statute of limitations.

### B.    Exhaustion

Exhaustion of state remedies is a necessary condition precedent to federal *habeas* relief. 28 U.S.C. § 2254(b)(1)(A). A state can waive the exhaustion requirement, but such waiver must be express. *Id*. § 2254(b)(3). A petitioner satisfies the exhaustion requirement by fairly presenting his claims to the highest state court before presenting them to the federal court. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004). To fairly present a claim, a petitioner must identify the facts that entitle the petitioner to relief, *Picard v. Connor*, 404 U.S. 270, 276-77 (1971), as well as the federal constitutional basis for the claim. *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995). A petitioner

may fairly present a claim in several ways, including by citing "pertinent federal cases employing constitutional analysis." *Rustici v. Phillips*, 308 Fed. Appx. 467, 469 (2d Cir. 2009) (internal quotation marks and citation omitted).

Here, petitioner fairly presented his ineffective assistance of counsel claim to the trial court in his CPL § 440.10 motion, and thereafter to the Appellate Division and the New York Court of Appeals. In each forum he clearly identified both the facts on which he relied and the federal constitutional basis for his claim. I thus conclude that petitioner has exhausted his *habeas* claim.

### C.    Merits

#### 1.    Legal Standards

##### a.    AEDPA's Deferential Standard of Review

Under 28 U.S.C. § 2254(d), a federal court may grant an application for a writ of *habeas corpus* only if the petitioner can show that the adjudication of the claim in state court was "contrary to, or involved an unreasonable application of, clearly established Federal law" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id*. § 2254(d)(1)-(2).

The phrases "contrary to" and "an unreasonable application of" clearly established federal law have independent meaning. "A state court's decision is 'contrary to' clearly established federal law 'if the state court applies a rule different from the governing law set forth in [the Supreme Court's] cases, or if it decides a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts.'" *Chrysler v. Guiney*, 806 F.3d 104, 117 (2d Cir. 2015) (quoting *Bell v. Cone,* 535 U.S. 685, 694 (2002)) (alterations in the original). A decision is an "unreasonable application of" clearly established federal law if it "correctly identifies the governing legal principle from [the Supreme Court's] decisions, but unreasonably applies it to the facts of the particular case." *Chrysler*, 806 F.3d at 117 (quoting *Bell*, 535 U.S. at 694) (alterations in the

original). "Clearly established" law "refers to the holdings, as opposed to the dicta of this Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). To the extent that the petitioner's claim required the determination of a factual issue by the state court, that determination "shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). The petitioner bears the burden of rebutting the state court's factual finding by a showing of "clear and convincing evidence." *Id.*

### b. Ineffective Assistance of Counsel Standards

An attorney renders constitutionally ineffective assistance of counsel if (1) her performance was deficient, and (2) "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In evaluating the first prong, the court employs a presumption that counsel's performance was adequate, which "is overcome only through a showing that counsel failed to act reasonably considering all of the circumstances." *Jackson v. Conway*, 763 F.3d 115, 152 (2d Cir. 2014) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011)) (internal quotation marks omitted). In order to establish prejudice, petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* This standard requires the petitioner to demonstrate "a 'substantial,' not just 'conceivable,' likelihood of a different result." *Pinholster*, 563 U.S. at 189.

When reviewing an ineffective assistance claim under § 2254, the federal *habeas* court does not determine "whether counsel was actually ineffective but whether the state court 'applied *Strickland* to the facts of [the] case in an objectively unreasonable manner.'" *Pagan v. Lavalley*, 2017 WL 1331294, at *11 (S.D.N.Y. Jan. 18, 2017) (quoting *Bell v. Cone*, 535 U.S. 685, 698-99 (2002)), *report and recommendation adopted*, 2018 WL 3585274 (S.D.N.Y. July 26, 2018),

9

*appeal dismissed,* No. 18-2565 (2d Cir. Oct. 23, 2018). This standard is "difficult to meet," *Pinholster*, 563 U.S. at 181 (quoting *Harrington v. Richter,* 562 U.S. 86, 102 (2011)), because it is "doubly deferential," *Pinholtzer*, 563 U.S. at 190 (quoting *Knowles v. Mirzayance,* 556 U.S. 111, 123 (2009)): the initial review of counsel's performance by the state court is deferential under the *Strickland* standard, and the federal *habeas* court reviews the state court's conclusion "through the deferential lens of § 2254(d)." *Jackson*, 763 F.3d at 153 (quoting *Pinholster*, 563 U.S. at 198). Petitioner carries the burden of proof throughout. *Pinholster*, 563 U.S. at 181.

### 2.    Application to Petitioner's Case

Petitioner advances two arguments in support of the writ: first, that the New York Supreme Court unreasonably found that counsel had not provided deficient advice when adjudicating his § 440.10 motion, *see* Pet. Mem. (Dkt. No. 4) at 29-35; and second, that the Appellate Division unreasonably affirmed the trial court's determination that petitioner failed to show that he was prejudiced by counsel's allegedly deficient representation. *See id*. at 35-39.

### a.    Petitioner Has Not Rebutted the State Court's Factual Determination That He Was Not Incorrectly Advised

Whether petitioner received incorrect advice from his attorney is a question of fact, as to which the state court's determination is "presumed to be correct," 28 U.S.C. § 2254(e)(1), and the *habeas* petitioner has the burden of rebutting that determination with "clear and convincing evidence." *Id*.; *see also Lightfoot v. Smith*, 2008 WL 515051, at *11 (S.D.N.Y. Feb. 25, 2008) ("any state court factual findings relevant to an ineffective assistance claim must be presumed correct on federal habeas corpus review"). This principle is routinely applied where the petitioner accuses his trial counsel of misconduct in connection with plea offers. Thus, in *Bonilla v. Lee*, 35 F. Supp. 3d 551, 576 (S.D.N.Y. 2014), where the petitioner alleged that his trial counsel failed to convey a plea offer for a determinate 20-year term, and where the state court rejected that

allegation, finding that no such offer was ever made, the federal *habeas* court applied the § 2254(e)(1) presumption and concluded that petitioner "failed to meet his burden" with clear and convincing evidence. *See also Beauharnois v. Chappius*, 2015 WL 893091, at *17 (N.D.N.Y. Mar. 2, 2015) (applying § 2254(e)(1) presumption and finding that petitioner failed to rebut state court finding rejecting his claim that trial counsel "failed to advise him properly during plea negotiations, by not informing petitioner of his maximum sentencing exposure if he went to trial"); *Lin v. Fischer*, 2006 WL 3931592, at *5 (S.D.N.Y. Nov. 16, 2006) (applying § 2254(e)(1) presumption and holding that petitioner "failed to meet his burden" of rebutting state court's finding that trial counsel properly communicated plea offers to him and discussed them with him), *report and recommendation adopted*, 2007 WL 103021 (S.D.N.Y. Jan. 12, 2007).

Here too, petitioner has failed to adduce the clear and convincing evidence required to rebut the § 2254(e)(1) presumption. Petitioner's brief in this Court repeats the same arguments that he presented to the state courts, centered on two statements in the record that may be read as suggesting that the court, the prosecutor, and/or petitioner's trial counsel believed that petitioner was facing an aggregate maximum sentence of only four years. *See* Pet. Mem. at 32 ("The on-the-record discussions about Mr. Ross's maximum sentencing exposure suggest[ ] that all parties in this case thought that the sentences for each E felony count county not run consecutively.").

Justice Zweibel expressly considered the same statements in reaching his decision on the § 440.10 motion, and found nothing in them to indicate "that [petitioner's] attorney did not explain that the sentences could run consecutively if he was convicted of both counts during their extensive discussions." (SR. 122.) His view of the evidence was not unreasonable.

The first statement was made on February 28, 2011, when petitioner's counsel informed the Court that petitioner had rejected a plea offer under which he would plead to one count of

11

attempted sexual abuse in the first degree in return for a sentence of two years in prison followed by five years of post-release supervision:

> THE COURT:    And you made it clear to him that potentially he faces a possible sentence of a four year determinate sentence and fifteen years post release supervision[?]
>
> MS. PELOSI:    Yes, I was very clear about that.

(SR 48-49; Huntley Tr. 2-3.)

In context – and particularly given that the plea offer under discussion would have required petitioner to plead to only one count of attempted sexual abuse – both the court's question and counsel's response were ambiguous as to whether the issue was the maximum sentence for that one count (which was four years) or the maximum aggregate sentence for the two counts that petitioner faced at trial (which was eight years). Thus, counsel's statement on February 28, 2011 does not show that she was under the mistaken impression that her client's maximum aggregate exposure was four years.

The second statement, made on March 1, 2011, is even less probative of what petitioner's counsel thought, since it was made by ADA Brady, who argued that petitioner's bail should be revoked because trial had begun and he faced "a minimum of two years in state prison and a maximum of four," thus giving him "every incentive to flee." (SR 53; Huntley Tr. 172.) Attorney Pelosi was not asked to respond to the prosecutor's statement regarding the potential sentence, and did not volunteer her opinion. Moreover, as Justice Zweibel noted, there were obvious "strategic reasons" for her silence on the point. (SR 122.) Counsel may well have calculated that it would be unwise to inform the court, in the middle of a bail argument, that her client had even more "incentive to flee" than the prosecutor had articulated.

In any event, the factual question underlying petitioner's ineffective assistance claim is not what his counsel said (or did not say) in court; it is what she said (or did not say) to her client

during their private plea discussions, which he described, in his affidavit, as "extensive." (SR 44.) Neither of the record excerpts on which petitioner now relies resolves that question. Given that the only evidence directly supporting petitioner's claim is his own "self-serving assertion," *Bonilla*, 35 F. Supp. 3d at 576; that it was counsel's practice to research her client's maximum sentence and discuss it with the client; and that petitioner did not submit the relevant portions of counsel's notes, which were in his wife's possession, Justice Zweibel reasonably concluded that petitioner failed to establish that his attorney advised him incorrectly. (SR 120.) That finding is entitled to substantial deference under § 2254(e)(1). Petitioner has not presented the clear and convincing evidence required to rebut the state court's factual determination.

**b.    Petitioner Has Not Demonstrated Any Prejudice From Counsel's Allegedly Incorrect Advice.**

Had petitioner's trial counsel advised him, incorrectly, that the maximum sentence he faced on all counts was only four years, that fact would establish that counsel's performance was deficient, thereby satisfying the first prong of *Strickland*. A series of cases confirm that, in connection with a decision as to whether to plead guilty, counsel should "inform the defendant of the strengths and weaknesses of the case against him, as well as the alternative sentences to which he will most likely be exposed." *Purdy v. United States*, 208 F.3d 41, 45 (2d Cir. 2000); *see also United States v. Gordon*, 156 F.3d 376, 380 (2d Cir. 1998) (quoting *Boria v. Keane*, 99 F.3d 492, 497 (2d Cir.), *decision clarified on reh'g,* 90 F.3d 36 (2d Cir. 1996)) ("By grossly underestimating Gordon's sentencing exposure . . . [attorney] Dedes breached his duty as a defense lawyer in a criminal case 'to advise his client fully on whether a particular plea to a charge appears desirable.'") *Reese v. United States*, 317 F. Supp. 3d 838, 846 (S.D.N.Y. 2018) (quoting *Purdy*, 208 F.3d at 45) ("Counsel's professional advice to the client should entail an explanation of: the terms of the plea offer, the "strengths and weaknesses" of the client's case, and the difference

13

between the sentencing exposure presented in the plea offer and that which the client would most likely face if he were convicted at trial.").

The second prong of *Strickland*, however, requires the petitioner to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. In this case, both the trial court and the Appellate Division found that petitioner did not make the necessary showing. In denying his consolidated appeal on the merits, the Appellate Division correctly identified the *Strickland* standard and held that petitioner "failed to demonstrate that, but for counsel's allegedly incorrect advice regarding the possibility of consecutive sentencing, there was a reasonable probability that defendant would have accepted the People's plea offer." *Ross*, 123 A.D.3d at 454, 998 N.Y.S.2d at 177.

On a *habeas* petition, task of the federal district court is not to reweigh the evidence or substitute its own judgment for that of the state court; rather, the *habeas* court considers whether the state court applied *Strickland* to the facts of the case in an "unreasonable manner." *Bell*, 535 U.S. at 699. Moreover, where – as here – the state court adjudicated the ineffective-assistance claim on the merits, "review under § 2254(d)(1) is limited to the record that was before the state court." *Pinholster*, 563 U.S. at 181. After reviewing that record, I conclude – once again – that the state court's determination was not unreasonable.

In *Lafler v. Cooper*, 566 U.S. 156 (2012), the Supreme Court addressed the precise question presented here – "how to apply *Strickland*'s prejudice test where ineffective assistance results in a rejection of the plea offer and the defendant is convicted at the ensuing trial," *id.* at 163 – and answered it:

> In these circumstances a defendant must show that but for the ineffective advice of counsel there is a ***reasonable probability*** that the plea offer would have been presented to the court (*i.e.*, ***that the defendant would have accepted the plea*** and the prosecution would not have withdrawn it in light of intervening circumstances),

14

> that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Id.* at 164 (emphasis added). *See also Aeid v. Bennett*, 296 F.3d 58, 63-64 (2d Cir. 2002) (petitioner was required to show a reasonable probability that, but for his attorney's mistaken advice, he would have been offered, and "would have accepted," a legal sentence that would have been more favorable than the sentence ultimately imposed after trial).

In *Aeid*, it was undisputed that both the prosecutor and the defense attorney misapprehended the relevant provisions of state law during their plea negotiations. Both believed that if petitioner was sentenced to the maximum term of 25 years he would be eligible for parole in 8-1/3 years (after serving one-third of his sentence). 296 F.3d at 61. Consequently, the plea offer was for 15 years, with a mandatory minimum of 5 years (again, one-third of the full sentence). *Id.* Over his attorney's advice, petitioner rejected the offer. *Id.* In fact, due to a recent change in the law, petitioner would be required to serve one-half of whatever term he received, making his maximum exposure 12-1/2 to 25 years, and making the People's offer "illegal." *Id.* On these facts, the district court issued the writ, but the Second Circuit reversed. The appellate court held that while it was likely that the prosecutor (once accurately informed about the requirements of state law) would have offered a legal sentence of 7-1/2 to 15 years imprisonment, petitioner "never asserted" that he would have "accepted" such an offer, which was "a critical omission," *id.* at 64, because a *habeas* petitioner is required "to allege that correct advice from defense counsel would have altered [his] decision." *Id.*

Petitioner Ross, unlike the petitioner in *Aeid*, was presented with a concrete and lawful plea offer. Moreover, it is apparent that he seriously considered the offer – conducting "extensive conversations" about it with his counsel – before he rejected it. (SR 44, 48-49; Huntley Tr. 2-3.) Yet he too has never asserted that he would have accepted that offer if properly advised. Instead,

15

petitioner told the state courts, and now tells this Court, that if he had known that he faced a total of eight years imprisonment on conviction (rather than four), he would have done much the same thing; that is, he would have "seriously considered accepting" the People's offer. (SR 45.)

Both before and after *Lafler*, the courts in this Circuit have required more than this. *Habeas* petitioners alleging that they turned down favorable plea offers due to the ineffective assistance of their trial counsel are routinely required, at a minimum, to assert that they likely would have *accepted* those offers (if properly advised), and to present some "objective evidence," beyond their own postconviction testimony, to support their assertions. *Mask v. McGinnis*, 233 F.3d 132 (2d Cir. 2000), is particularly instructive. The prosecutor offered Mask "ten to life," based on a mutual misapprehension by both counsel that petitioner was a "persistent violent felony offender" who could not be offered a lower sentence. 233 F.3d at 135-36. Petitioner rejected the offer, after which he was convicted and sentenced to 20 to 40 years in prison. *Id*. at 136. In support of his post-conviction CPL § 440.10 motion, petitioner attested that while he had rejected the ten-year offer as unreasonable, "a plea offer that I would have considered to be reasonable would have been 8 to 16 years." *Id.* at 141. The district court found this showing sufficient to demonstrate prejudice, and the Second Circuit agreed, because "[g]iven the context in which this claim arises, [petitioner's] affidavit constitutes a sufficiently affirmative statement that he *would have accepted a better plea agreement had it been offered.*" *Id.*[7]

---

[7] *See also McFarlane v. Martuscello*, 2016 WL 4991532, at *2 (E.D.N.Y. Sept. 16, 2016) ("[T]he prejudice prong of the *Strickland* test requires a reasonable possibility that Petitioner would have accepted the offer."); *Morgan v. Lee*, 2017 WL 1239624, at *4 (E.D.N.Y. Mar. 31, 2017) ("Petitioner bears the burden of showing that . . . but for Defense Counsel's performance, Petitioner would have accepted the offer, the Prosecution would have consummated it, and Petitioner would thereby have received a less severe sentence than was actually imposed."), *certificate of appealability denied,* 2017 WL 5041007 (2d Cir. Aug. 30, 2017); *Shields v. Stallone*, 2016 WL 11483841, at *17 (S.D.N.Y. Aug. 16, 2016) ("To demonstrate the requisite 'prejudice' in this

The "objective evidence" in *Mask* was the 'large disparity between the defendant's sentence exposure following a trial and his potential exposure had a plea offer been made on the basis of accurate information." *Id.* at 142. A similar (though somewhat more modest) disparity is present here, between the two-year offer made by the People and the eight-year sentence ultimately imposed. However, before this Court may even consider that disparity as objective evidence of prejudice, petitioner must clear the first hurdle and make an affirmative showing that he would likely have *accepted* the plea – not merely "considered" it – if fully advised. *Shields*, 2016 WL 11483841, at *17. Petitioner Ross has not done so. I therefore conclude – applying the "double deference" required under *Strickland* and § 2254(d) – that the Appellate Division, which issued the last reasoned opinion on this point, did not unreasonably apply clearly established federal law in concluding that petitioner failed to carry his burden of establishing that he was prejudiced by counsel's alleged misconduct.

The additional cases on which petitioner relies (*see* Pet. Mem. at 20, 25) are not to the contrary. In *Gordon*, 156 F.3d at 377, the petitioner attested: "Had I been told prior to trial that . . . the maximum sentence after conviction after trial could be 12 to 17 years greater than the statutory maximum for a single offense, *I would have accepted the plea offer*." In *Pham v. United States*, 317 F.3d 178, 181 (2d Cir. 2003), the petitioner "stated that he told his lawyer he was *willing to plead guilty* if he received a sentence of between five and eight years." And in *Raysor v. United States*, 647 F.3d 491,493 (2d Cir. 2011), the petitioner swore that "if properly advised by counsel, he *would have accepted* the plea bargain instead of proceeding to trial." (All emphases added.) Petitioner here – although advised by counsel at every stage of his post-conviction proceedings –

---

context, Plaintiff would have needed to provide objective evidence, apart from his own 'self-serving, post-conviction testimony,' that he would have accepted the plea offer, had he been made aware of it"), *report and recommendation adopted,* 2016 WL 5930262 (S.D.N.Y. Oct. 12, 2016).

17

states only that he would have "seriously considered" whether to accept the plea. (SR 44.) On this record, I cannot conclude that that the decision of the Appellate Division was an unreasonable application of *Strickland*. Petitioner therefore has not met his burden under AEDPA. [8]

### D.      Evidentiary Hearing

Petitioner requests, in the alternative, that this Court "order an evidentiary hearing to supplement the record." Pet. Mem. at 39; *see also* Pet. Reply Mem. (Dkt. No. 19) at 16-18. Petitioner concedes, however, that under *Pinholster*, 563 U.S. at 180-81, a federal *habeas* court "may not order a hearing to answer the question posed by 28 U.S.C. §2254(d)(1) – whether the state court treatment of petitioner's ineffective assistance claim was contrary to, or an unreasonable application of, established Supreme Court precedent." Pet. Reply Mem. at 17. Because the courts of New York adjudicated petitioner's ineffective-assistance claim "on the merits," this Court is limited to the record created there until and unless it has determined – based on that record – that the state court adjudication was "contrary to, or involved an unreasonable application of, clearly established Federal law" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2); *see also Miller v. Graham*, 2018 WL 3764257, at *12 n.9 (E.D.N.Y. Aug. 8, 2018) (denying evidentiary hearing where "all of the claims that the court is evaluating were

---

[8] Petitioner also cites *Fulton v. Graham*, 802 F.3d 257 (2d Cir. 2015), for the proposition that a petitioner can meet a "threshold showing of prejudice by merely alleging that he was 'interested in the plea, due to the physical evidence against him.'" Pet. Mem. at 36 (quoting *Fulton*, 802 F.3d at 266). In *Fulton*, however, the petitioner's ineffective assistance claim was presented in a highly unusual posture: rather than apply any form of AEDPA deference, the Second Circuit held that a *de novo* determination of the claim would be required, because, although not unexhausted, the claim was neither procedurally barred nor determined on the merits in state court. 802 F3d at 263-65. *See generally Golb v. Attorney Gen. of the State of New York*, 870 F.3d 89, 98 (2d Cir. 2017) (it is "the rare case in which there is both no failure of exhaustion and no presumption that the [New York] Court of Appeals rejected the federal claim on the merits"), *cert. denied sub nom. Golb v. Schneiderman*, 138 S. Ct. 988 (2018).

18

adjudicated on their merits in state court"); *Toye v. Racette*, 2018 WL 679481, at \*6 (N.D.N.Y.

Feb. 2, 2018) (same).[9] Whether this Court could (or should) conduct an evidentiary hearing "as a

remedy for the state court's unreasonable federal law error," Pet. Reply Mem. at 17, is a purely

academic question here, as there was no "unreasonable federal law error."

## III.    CONCLUSION

For the foregoing reasons, I respectfully recommend that the petition be DENIED.

Dated: New York, New York
       February 28, 2019

_____
**BARBARA MOSES**
**United States Magistrate Judge**

## NOTICE OF PROCEDURE FOR FILING OF OBJECTIONS
## TO THIS REPORT AND RECOMMENDATION

The parties shall have fourteen days from this date to file written objections to this Report

and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). *See also* Fed.

---

[9] The *Pinholster* rule does not apply where the state court did not determine the ineffective-assistance claim on the merits. Thus, in *Fulton*, 802 F.3d 257, after first determining that petitioner's ineffective-assistance claim was neither procedurally barred nor determined on the merits in state court, *see id*. at 263-265, our Circuit "review[ed] the merits of Fulton's ineffective assistance claim *de novo*," *id*. at 265, ultimately concluding that the claim was "substantial enough to warrant further factual development in the district court." *Id*. at 266. Even in the context of a *de novo* review, however, the appellate court did not direct the district court to hold an evidentiary hearing. Rather, it "remand[ed] the cause for further proceedings consistent with this opinion," leaving it to the district court to determine whether to expand the record with affidavits or other documents, take live testimony, or both. *Id*. at 266-67.

R. Civ. P. 6(a) and (d). Any such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the Hon. Analisa Torres at 500 Pearl Street, New York, New York 10007, and to the chambers of the undersigned magistrate judge. Any request for an extension of time to file objections must be directed to Judge Torres. Failure to file timely objections will preclude appellate review. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).